UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Cole Jenkins,                         ) | |
|       Plaintiff,                ) | |
|                                   ) | Case No. 1:20-cv-01157-PB |
| v.                                   ) | |
|                                   ) | |
| Bit Fry Games Studios, Inc.,    ) | |
|       Defendant.              ) | |

**<u>PLAINTIFF COLE JENKINS'
OBJECTION TO DEFENDANT'S PRE-ANSWER
MOTION TO DISMISS</u>**

NOW COMES the plaintiff, Cole Jenkins, by and through counsel Sherman Law, PLLC and Objects to defendant's pre-answer motion to dismiss and states as follows:

**I.   SUMMARY OF ARGUMENT**

Disposition of claims based on a pre-answer motion to dismiss that relies on extrinsic evidence is not warranted. The well-plead facts establish the defendant made binding promises to induce Cole Jenkins, a California resident, to quit his job and move across the country. He accepted and relocated. He worked hard. The defendant quickly gave him additional job responsibilities. It promised promotions and raises. But the defendant did not deliver on what it originally promised or these new inducements.

Then, at a time when the defendant was processing one of Mr. Jenkins' promotions, he submitted a written HR complaint. One of his supervisors had suggested this action. Within days, the defendant terminated his employment. It provided no explanation. In addition to being retaliated against, Mr. Jenkins never received what the defendant originally or subsequently promised to him—wages, bonuses, stock options, and promotions.

The defendant's motion to dismiss all of Mr. Jenkins' claims should be denied. The parties should proceed with discovery.

## II.     RELEVANT FACTS:

Mr. Jenkins' Complaint includes sixty (60) short declarative factual statements.  All are incorporated into this Objection.  Attempting to respond succinctly, however, to defendant's motion they are summarized as follows:

The defendant identified through a letter captioned "Offer of Employment"[1] the terms and conditions of a job it offered to Mr. Jenkins.  See Complaint, ¶ 5.

This stated that his "2. Compensation" included a base salary that was "subject to adjustment any time."  (See Exhibit 1 attached to Defendant's Memorandum of Law in Support).  It included a discretionary bonus based on his "individual performance" and "the Company's achievement of certain milestones."  Id.  It included that it "*will be recommended that you* be granted an incentive stock option . . . for 15,000 shares of Company's non-voting common stock."  Id.

Each of these was a promise the defendant made to Mr. Jenkins.  Each remained a "term and condition" of his employment that, as alleged in the Complaint, the defendant failed to honor.

Shortly after Mr. Jenkins joined the defendant, he began performing additional responsibilities.  See Complaint, ¶¶18-24.  Reflecting this, the defendant identified him to investors as serving these additional roles.  Id.  He demanded a salary increase.  Id. The defendant authorized it.  Id.  But did not pay it.  Id.  When Mr. Jenkins objected, the defendant

---

[1]    It is acknowledged that this offer letter is referenced in Mr. Jenkins' Complaint.  Complaint, ¶¶ 5-9.  So are several other documents and communications that are relevant to what happened.

As argued herein, it is within the Court's discretion whether to consider extrinsic documents at this stage of the proceeding.  Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018).  It is Mr. Jenkins position that the meaning of some terms with the offer letter and how they apply can *only* be fully and fairly addressed at a later stage (i.e., *summary judgment)* of this proceeding.  Specifically, if the Court incorporates this document, it must consider and incorporate all of the others.  Doing any of this now, however, when the parties have not yet conducted *any* discovery is not warranted.

2

promised that it would make him "whole" by making the raise retroactive.  Id.  It did not.  Id.

As to the bonuses, Mr. Jenkins performance was exemplary as evidenced by his promotions and raises.  See Complaint, ¶¶ 13, 16, 18, 20, 22, and 25.  Although the Company met "certain milestones" regarding each of the projects identified in the attachment to Mr. Jenkins' Offer letter, the defendant did not pay some bonuses at all and only paid parts of others.  See Complaint, ¶¶ 13-15; Defendant's Exhibit 1, Exhibit A – which is list of projects and "milestones".  Mr. Jenkins' claims allege, therefore, that although this is identified as a "discretionary bonus" the defendant did not exercise its discretion in good faith.  Id.

Mr. Jenkins never received the 15,000 shares of stock.  See Complaint, ¶¶ 17,  92-93, 105-106.  It is alleged that this happened because the defendant *never* "recommended" it to its Board.  Id. at ¶¶ 92-93, 105-106.  Again, it failed to exercise its discretion in good faith.

The Offer also identified that Mr. Jenkins was an "at-will" employee.  Exhibit 1 to Defendant's Memorandum, page 2, § 3.

The Complaint repeatedly identifies the retaliation to which Mr. Jenkins was subjected.  This happened because he insisted on being paid the wages, bonuses, and stock he was promised *and* because he clearly expressed disapproval to a co-employee who talked about potential sexual abuse of minors.  See Complaint, ¶¶ 17, 20, 26-42.  After the latter, the co-employee, who was close friends with the CEO, refused to respond to software and hardware requests making it more difficult for Mr. Jenkins to do his job.  Id. at ¶¶ 44-46.  He changed the Company's access to personal communications of employees without notifying them of this change.  Id. at ¶¶ 47-52.  On the occasion that led to an HR report—he was physically threatening and violent.  Id. at ¶¶ 31-36.  When Mr. Jenkins reported these things, particularly the violence, to a supervisor, he was directed to put his HR complaint in writing.  Id. at ¶¶ 26-28.  He did and was terminated

within days without explanation—and without receiving the salary, bonuses, and stock.  Id. at ¶¶ 30, 53.

Mr. Jenkins alleges five claims for relief: (I) Wrongful termination, (II) Wage Violation (NH RSA 275 and FLSA), (III) Retaliation (NH RSA 275 and FLSA), (IV) Breach of Contract, and (V) Breach of the Covenant of Good Faith and Fair Dealing.

He filed suit in Rockingham County Superior Court on November 2, 2020.  The defendant removed it to this Court on December 3, 2020.

The defendant has now filed a pre-answer motion to dismiss largely based on *its* interpretation of a document outside the four corners of the Complaint.  This is Mr. Jenkins' objection.

### III.   STANDARD OF REVIEW

#### A.   All Facts Considered In Mr. Jenkins' Favor

To withstand a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must include factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Under this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In evaluating the pleadings, the Court may excise any conclusory statements from the complaint and must credit as true all non-conclusory factual allegations and reasonable inferences drawn from those allegations. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). It "may also consider 'facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss.'" Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019) (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### B. It is Within The Court's Discretion to Consider Documents Outside the Complaint

Consideration of documents "not attached to the complaint or expressly incorporated by it" is normally forbidden in the context of a motion to dismiss. Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018). The First Circuit Court of Appeals has recognized, however, "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). In Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018), the First Circuit recognized that the Court is not required to consider external documents referred to in the Complaint, but it may exercise its discretion to do so.

### IV. LEGAL ARGUMENT

### A. Mr. Jenkins Has Alleged A Viable Tort Claim for Wrongful Termination Claim in Count I

To maintain a successful wrongful discharge claim under New Hampshire law, a plaintiff must prove both "that the discharge was 'motivated by bad faith, retaliation, or malice'" and "that the plaintiff was discharged 'for performing an act that public policy would encourage or

for refusing to do something that public policy would condemn.'" Leeds v. BAE Sys., Inc., 165 N.H. 376, 379 (2013)(quoting Karch v. BayBank FSB, 147 N.H. 525, 536 (2002)).  Whether an employee's acts or refusals to act further a public policy interest ordinarily is a question of fact for the jury to resolve.  Id.

 Here, Mr. Jenkins has alleged facts sufficient to establish both elements of this claim.  Regarding bad faith, the facts and reasonable inferences therefrom establish that after accepting the position and moving across the country, Mr. Jenkins performed extremely well in his job.  He received additional job responsibilities, was promised raises, and the defendant identified *him* to investors as serving in positions with the Company that were steps above his actual title.  Despite this, the defendant failed to pay him raises, bonuses earned, and the stock he was promised.  When he continued to complain *and* then made an HR report detailing the conduct of a co-employee, he was terminated with no identified reason.  From these facts, bad faith is more than a reasonable inference.

 Moreover, regarding bad faith or retaliation the temporal proximity between Mr. Jenkins making a report to HR and the termination of his employment—only four days and at a time when the Company was processing his promotion—is sufficient to allow a reasonable jury to infer bad faith *and* retaliation.  See Harrington v. Aggregate Indus. Northeast Region, Inc., 668 F.3d 25, 32 (1st Cir.  2012)(recognizing that "a reasonable factfinder could focus on the close temporal proximity between" the plaintiff's protected activity and his termination and infer retaliation).

 Public policy for purposes of a wrongful termination claim "includes a wide range of societal goals including safety and public welfare, protection of an at-will employee's promised compensation, and good faith reporting of reasonably perceived improper activity."  Dr. Luchy

Hidalgo-Semlek v. Hansa Medical, Inc., Dkt. No. 1:19-cv-00436-JL (D.N.H. October 20, 2020), citing Sheeler v. Select Energy & NEChoice, LLC, No. 03- cv-59-JD, 2003 WL 21735496, at *8 (D.N.H. Jul. 28, 2003). "[T]he public policy violated by a wrongful discharge 'can be based on statutory or nonstatutory policy'" at the state or federal level. Id. citing Karch v. BayBank FSB, 147 N.H. 525, 537 (2002) (quoting Cilley v. N.H. Ball Bearings, Inc., 128 N.H. 401, 406 (1986)). And the "multifaceted balancing process" articulated in Cloutier "does not impose absolute requirements" or require a source that "clearly expresses the policy in question." Id. citing Grivois v. Wentworth-Douglass Hosp., No. 12-cv-161-JL, 2014 WL 309354, at *7 (D.N.H. Jan. 28, 2014) (quotations omitted). In fact, a plaintiff need not even show a "strong and clear public policy," Cloutier, 121 N.H. at 922, and when the public policy question reaches the jury, their finding "need not be supported by case or statutory law." Id. citing MacDonald v. Tandy Corp., 796 F. Supp. 623, 626–27 (D.N.H. 1992), aff'd, 983 F.2d 1046 (1st Cir. 1993).

Here, Mr. Jenkins has identified *multiple* instances in which he engaged in conduct that a jury could reasonably conclude public policy promotes including: (a) making a report to people responsible for human resource functions at Bit Fry in which he identified conduct by a manager that was physically violent and potentially invaded employee privacy, (b) expressing disapproval to his superior about sexual comments the superior made, (c) requesting to be paid bonuses identified in his compensation package given his job performance (promotions) and the company meeting the "milestones", (d) requesting to be paid stock options identified in his compensation package, (e) requesting to be paid a promised retroactive pay increase, and (f) identifying to the company attorney information by a co-employee that he reasonably believed evidenced potential criminal conduct. Complaint, ¶ 64.

It is clear that public policy promotes employees from advising supervisors when the

conduct of co-employees endangers the safety of others.  See Dr. Luchy Hidalgo-Semlek, supra, citing Grivois v. Wentworth-Douglass Hosp., No. 12-cv-161-JL, 2014 WL 309354, at * 9 (D.N.H. Jan. 28, 2014)(noting that "Grivois' wrongful discharge claim is not that public policy encouraged her to disagree with her supervisors' decisions, but that public policy encouraged her to inform her supervisors of her concerns that those decisions endangered the safety of others.")

Likewise, the demand for payment of compensation owed is something public policy promotes.  As this Court previously identified in Fraize v. Fair Isaac Corp.,  Dkt. No. 17-cv-231-PB (D.N.H., October 30, 2017), New Hampshire's Wage Act makes it a crime for an employer to withhold wages that are due to an employee.  See N.H. Rev. Stat. § 275:43.  Although it is not entirely clear whether the bonuses at issue constitute "wages" under this state statute, there is at a minimum a dispute of fact about whether they were owed.  As in Fraize, it is now a question for the "for the jury to decide," whether an employee demanding payment of bonuses identified in an offer letter is something that public promotes.

The Court should deny defendant's motion as to Mr. Jenkins' Count I.

B.      **Mr. Jenkins Has Alleged Viable Contract Claims**

1.      **Facts Construed As True Establish Breach of Contract (Count IV)**

It is well recognized that promises between an employer and employee, especially those involving matters such as salary and benefits, are contractual in nature.  As the New Hampshire Supreme Court noted in Panto v. Moore Business Forms, Inc., 130 N.H. 730, 735 (N.H. 1988), "[b]ecause compensation and fringe benefits are usual incidents of this contractually governed economic relationship, it is generally true that a statement on these subjects by the party who pays the compensation can be viewed objectively, see McConnell v. Lamontagne, 82 N.H. 423, 425 (1926), as meant to be a subject of binding agreement."

The Court recognized the same in Butler v. Walker Power, Inc., 137 N.H. 432, 436 (N.H. 1993). It added that the "usual incidents" of a "contractual relationship" such as compensation and benefits are contractually binding "regardless of whether an employment relationship is at-will or tenured." Butler, 137 N.H. at 436.

How an employee may accept promises made is equally clear. In addition to so stating, "continued service by an employee who is free to leave his job at any time may be seen as consideration for an employer's offer to modify employment terms favorably to the employee." Panto, 130 N.H. at 736 citing Gilman v. County of Cheshire, 126 N.H. 445, 449 (1985). Put more succinctly, "the employee's continuation on the job is the very act by which he accepts the offer." Panto, 130 N.H. at 736 citing Duldulao v. St. Mary of Nazareth Hospital Center, 115 Ill.2d 482, 490, 106 Ill. Dec. 8, 12, 505 N.E.2d 314, 318 (1987).

Panto also reinforces that both oral promises and written promises are contractually enforceable. The only difference is that offers made in writing provide "a further measure of support from the clarity of the provisions" and allows disputes regarding "claims of breach to be resolved readily, see Sawin v. Carr, 114 N.H. 462, 465 (1974); Restatement (Second) of Contracts § 33(2), and to enable a reasonably certain computation of damages, see Whitehouse v. Rytman, 122 N.H. 777, 780 (1982); Restatement (Second) of Contracts, supra § 352." Panto, 130 N.H. at 735-36; see also International Business Machines Corp. v. Khoury, -- N.H. --, 177 A.3d 724 (N.H. 2017)(recognizing enforceability of promises regarding wage/commission payments in the employer-employee context).

Here, Mr. Jenkins' breach of contract claim is specific. It does *not* derive generally from the termination of his employment. Instead, it is based on the promises the defendant made and that Mr. Jenkins accepted regarding his compensation, benefits, and job positions. Some of these

9

promises were within his offer letter including that he would be paid bonuses based on two identified predicates: his job performance and the defendant meeting certain milestones. As alleged in the Complaint, his job performance was exemplary as evidenced by the defendant identifying to investors that it was employing him in a higher position than his actual title *and* by defendant promising him (a) raises and (b) promotions. It also is alleged that the defendant met the performance "milestones".

In its motion, the defendant argues that the promise to pay a bonus is not enforceable because the offer letter uses the word "discretionary." This analysis, though, is incorrect. The adjective "discretionary" arguably allowed the defendant to incorporate other factors when deciding about the bonus, but it still had a contractual duty to Mr. Jenkins regarding it. It is now a question of fact that needs to be resolved in discovery whether the defendant exercised the discretion it reserved in good faith – or whether it simply failed to exercise this discretion at all in favor of simply breaching this contractual duty for no legitimate reason.

The defendant's argument also is inconsistent with principles of fairness and justice. It is solely based on a document outside the scope of the Complaint. The defendant offers *its* interpretation what the words of the document mean asking the Court to render a dispositive ruling. But this is at a time when the parties have not engaged in any discovery. This is relevant because the defendant's argument that the offer letter is *not* contractual necessarily means that Court would not and *should not* be constrained by the four corners of the offer letter when interpreting it. It can, therefore, consider other documents that shed light on the meaning of the terms within it. In short, it is evident by the defendant's own argument that this claim is *not* ripe for dismissal.

Regarding the "retroactive pay increase based on promotion and assignment of additional job responsibilities" (Complaint, ¶ 91), the facts alleged in the Complaint (¶¶ 13-25, 53-60) establish the following: (a) Mr. Jenkins was assigned job responsibilities beyond his title; (b) he performed them with distinction ; (c) the defendant identified him to investors as performing these additional roles; (d) Mr. Jenkins asked to be promoted to the position that the defendant identified he was already doing; (e) the defendant agreed; (f) Mr. Jenkins also asked a raise commensurate with the title; (g) the defendant agreed; (h) Mr. Jenkins accepted these promises by the defendant and remained employed; (i) the defendant delayed in implementing the changes; (j) when the raise was finally implemented in December 2019, Mr. Jenkins demanded that it be retroactive; (k) the defendant agreed; (l) Mr. Jenkins again accepted this promise by remaining employed; (m) the defendant, however, then terminated his employment without paying him the increase it promised to make retroactive.  These and the reasonable inferences therefrom, all construed as true, are sufficient to establish that there were promises, acceptance, continued employment by Mr. Jenkins, and failure by the defendant to honor its promises sufficient to constitute breach of its contractually-obligated promises.

Similarly, regarding the stock the offer letter promised that the defendant "would recommend to the Board of Directors that Mr. Jenkins be granted" 15,000 shares.  It is alleged that the defendant breached this promise by *never* making this recommendation.  This allegation must be construed as true.  It is a fact that will be the subject of discovery.  This breach of a promise clearly made in the offer letter is not something that now can be resolved.

The Court should deny defendant's motion as to Count IV.

### 2. Facts Construed as True and Reasonable Inferences Therefrom Establish Claim for Breach of Covenant of Good Faith and Fair Dealing (Count V)

The First Circuit, interpreting Massachusetts law, has recognized a claim for breach of the covenant of good faith and fair dealing when an employer fails to pay compensation and benefits promised to an employee.  Suzuki v. Abiomed, Inc., 943 F.3d 555 (1st Cir. 2019).  The same analysis employed there, applies here.

New Hampshire, like Massachusetts, recognizes that "[i]n every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another." Skinny Pancake-Hanover, LLC v. Crotix, --- N.H. ---, 214 A.3d 166, 173 (N.H. 2019), citing Livingston v. 18 Mile Point Drive, 158 N.H. 619, 624 (2009).  New Hampshire does not merely have "one rule of implied good-faith duty."  Skinny Pancake-Hanover, LLC, 214 at 173.  It has "a series of doctrines, each of which serves different functions."  Id.  These doctrines fall into three categories: "(1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance."  Id.

This Count V is a claim under the third category focusing upon the defendant's bad faith specifically in failing to pay the compensation, bonuses, and stock it promised to Mr. Jenkins.[2] Under this category, "an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties purpose or purposes in contracting." Centronics Corporation, 132 N.H. 133, 143-44 (1989). While the third category is comparatively narrow, its broader function

---

[2] This is a separate and distinct claim from Mr. Jenkins' Count I which focuses more broadly on the totality of treatment Mr. Jenkins received when employed that ended with defendant's termination of his employment.

is to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations, as well as "with common standards of decency, fairness, and reasonableness." Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619 (2009), citing Richard v. Good Luck Trailer Court, 157 N.H. 65 (2008).

As identified previously, the meaning of the terms within the offer letter *and* the promises made to Mr. Jenkins have not yet been the subject of discovery. This Court should not dismiss this claim based solely upon a document extrinsic to the Complaint based on the defendant's unilateral interpretation of it. There are additional facts and additional documents that are relevant to the meaning of this offer letter *and* the oral communications between the parties regarding the additional compensation to be paid and promotions granted to Mr. Jenkins. So, before the Court addresses this Count, the parties should proceed with discovery *and* present any and all evidence regarding the meaning of the terms within the offer letter and by oral communication so that the Court can fully and fairly assess whether the defendant exercised the "discretion" it purportedly reserved regarding the compensation in good faith.

      **C.**     **Mr. Jenkins Has Alleged A Viable State Wage Violation Claim (Count II)**

In Demers Agency v. Widney, 155 N.H. 658 (2007) the New Hampshire Supreme Court addressed whether a bonus to a salaried employee that was not paid could constitute "wages" for purposes of New Hampshire's wage statute. The Court identified that the definition of "wages" in New Hampshire includes "compensation . . . for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." RSA 275:42, III (1999). In rejecting the defendant's argument that a bonus was *not* wages, the Court explained that the "absence of the word 'bonus' from the list of benefits in RSA 275:42, III does *not* mean that a bonus cannot be wages; the statute does not purport to

13

define the term "wages," but, instead, simply specifies the circumstance, i.e., "when due," under which certain benefits are to be treated as wages." Demers, 155 N.H. at 662. The Court then determined that the trial court correctly ruled that the unpaid bonus qualified as wages pursuant to New Hampshire's Wage statute *because* the "bonus [was] part of an agreed-upon compensation package and the employee ha[d] performed all of the duties necessary to trigger the employer's obligation to pay the bonus." Id.; see also Ives v. Manchester Subaru, Inc., 126 N.H. 796, 800 (1985) (holding that agreed-upon profit sharing "fall[s] within [RSA 275:42, III's] reference to compensation calculated on some 'other basis'" notwithstanding that the profit-sharing agreement "did not provide a stated date or certain time for payment of the share"); Galloway v. Chicago-Soft, 142 N.H. 752, 756-57 (1998) (holding, in case involving contract interpretation, that a former employee was entitled to commissions on sales closed before his termination date, notwithstanding that his employer did not receive payment for those sales until after termination date).

    The same holding is warranted here. The defendant acknowledges in its Memorandum that there were "two criteria that had to be satisfied" for the bonus. (Memorandum, page 9). Based on the facts as pleaded, these criteria were met. Mr. Jenkins' job performance was exemplary. The "company milestones" were achieved.

    The use of the word "discretionary" in the Offer letter, is not defined. It is now being interpreted by the defendant without affording Mr. Jenkins the opportunity to conduct discovery regarding how the parties defined it. By itself, it is not dispositive regarding a claim challenging the defendant's failure to pay what it promised, Mr. Jenkins accepted, and what Mr. Jenkins earned.

D.   **Withdrawal of Separately Alleged Retaliation Claim (Count III)**

Mr. Jenkins withdraws Count III which is a separately pleaded claim for retaliation while continuing to allege that retaliation as an aspect of Count I.

E.   **Withdrawal of Claim Under FLSA**

Mr. Jenkins withdraws the aspect of Counts II alleging and arising under the FLSA.

**WHEREFORE,** Mr. Jenkins requests an Order:

A.   Denying the Motion to Dismiss;

B.   Scheduling this matter for a hearing;

C.   Granting Mr. Jenkins leave to amend to the extent the Court identifies additional facts necessary to establish any claim alleged;

D.   If the Court considers extrinsic evidence, granting Mr. Jenkins sufficient time to address the issues raised in defendant's motion as if it were a Motion for Summary Judgment so that he can submit admissible evidence to rebut and/or counter what defendant has presented; and

E.   Granting such other and further relief as the Court deems just and equitable.

                                                  Respectfully submitted,

                                                  COLE JENKINS

                                                  By and through his attorneys,

Date:  1/7/2021

                                                  /s/ John P. Sherman
                                                  John P. Sherman #12536
                                                  Sherman Law, PLLC
                                                  111 Bow Street, Unit #2
                                                  Portsmouth, NH  03801
                                                  (603) 570-4837
                                                  jsherman@johnshermanlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has this day been forwarded via the Court's Electronic Case Filing System to counsel of record.

*/s/ John P. Sherman*